Defendant-appellant, Stanley Penn, appeals the judgment of the Franklin County Court of Common Pleas whereby appellant was convicted of four counts of rape, one count of felonious assault, and two counts of possession of criminal tools, pursuant to a jury trial.
On April 12, 1999, the Franklin County Grand Jury indicted appellant on seven counts of rape, in violation of R.C. 2907.02; two counts of kidnapping, in violation of R.C. 2905.01; three counts of felonious assault, in violation of R.C. 2903.11; one count of compelling prostitution, in violation of R.C. 2907.21; and five counts of possession of criminal tools, in violation of R.C. 2923.24. The rape charges contained sexually violent predator specifications and the kidnapping charges contained sexual motivation specifications. Subsequently, the parties agreed to have the jury decide on six counts of rape, with sexually violent predator specifications, one count of kidnapping, with a sexual motivation specification, one count of felonious assault and three counts of possession of criminal tools.
Appellant pled not guilty to the above charges and waived his right to a jury trial on the sexual motivation and sexually violent predator specifications. A jury trial commenced on the other charges.
At trial, Crystal Canbi testified that, on the evening of April 1, 1999, appellant approached her at a local bar. Appellant questioned her about a cellular phone she took from him and threatened "to take it out" on her if she did not return the phone. According to Canbi, appellant made her leave the bar with him and walk to his apartment.
Canbi claimed that, while she was at appellant's apartment, he made her remove her clothes, except for her shirt. At one point during the encounter, according to Canbi, appellant told her not to scream. As well, appellant stated, "I told you if it come to this, I was going to split you from here to here." Canbi interpreted these words as appellant threatening to cut her.
Canbi testified that appellant also used force against her. For example, appellant punched Canbi numerous times, threw a glass at her face, and hit her with a hammer. As well, appellant forced Canbi to lie on the floor while he poured bleach inside her vagina and was forced to sit in the bleach for about one hour. Furthermore, according to Canbi, appellant forced her to insert a knife in her mouth and vagina and cut herself.
Moreover, Canbi testified about the sexual abuse that eventually transpired at the apartment. Canbi claimed that appellant forced her to perform cunnilingus on a visitor named Caris Ann Soto. Canbi also described appellant giving Soto a hammer and, following a discussion between appellant and Soto, Soto inserted the hammer into Canbi's anus. Canbi further testified that appellant inserted his fist in her anus and forced her to perform fellatio on him while in the living room and again while in his bedroom. During the incident, Canbi was able to call 911 while appellant was temporarily talking in the hallway outside his apartment. Thereafter, two Franklin County Sheriff's Deputies arrived and arrested appellant.
Mia Howell was visiting appellant's apartment on the evening of April 1, 1999, and witnessed some of the events described by Canbi. At trial, Howell testified to seeing appellant punch Canbi and throw a glass at her head. Howell was also present at the apartment when appellant poured bleach on Canbi and forced her to stick a knife in her vagina and mouth. Howell described appellant bringing out two garbage bags and telling Canbi that he would kill her and throw her in a river. Moreover, appellant told Howell not to touch the phone and indicated that he would kill Canbi if Howell left the apartment. Nonetheless, Howell testified that she managed to leave the apartment and have her roommate call the police.
Appellant also testified at trial. Appellant stated that he saw Canbi at a local bar on the evening of April 1, 1999, and questioned her about his cellular phone. Later, during the early morning hours of April 2, 1999, Canbi came to his apartment. Appellant testified that Canbi was bleeding when she arrived at the apartment. Appellant then claimed that Canbi grabbed appellant's hammer upon entering the apartment; however, appellant yanked the hammer from Canbi. Appellant claimed that he hit her in the process of retrieving the hammer. Appellant also testified that Soto visited him at the apartment, and that Canbi and Soto began performing cunnilingus on one another. At one point, according to appellant, Canbi asked for a drink from a glass that he was holding. Appellant threw the glass at her because he did not want to walk over and hand the glass to her. Appellant asserted that Canbi was unable to catch the glass and it hit her in the face. Next, according to appellant, he took out a bottle of bleach from the bathroom to clean some shoes. As he was carrying the bleach back to the bathroom, Soto indicated that Canbi was unclean. Appellant told Canbi "clean your ass up" and tipped the bleach bottle toward Canbi. Appellant thought the bleach bottle was covered with a cap when he tipped it over. However, the cap was not on the bottle and bleach spilled on Canbi. Thereafter, appellant claimed that he went to his bedroom while Canbi and Soto continued with their sexual activities. Appellant testified that he was in his bedroom when the sheriff's deputies arrived.
As noted above, the jury found appellant guilty of four counts of rape, one count of felonious assault, and two counts of possession of criminal tools. After the jury found appellant guilty of four rape counts, the trial court held a hearing on the sexually violent predator specifications and found appellant to be a sexually violent predator. The trial court sentenced appellant accordingly and issued a judgment entry reflecting its sentence. However, the judgment entry contradicts the trial court's decision to find appellant to be a sexually violent predator. The judgment entry indicates that plaintiff-appellee, the state of Ohio, dismissed all sexually violent predator specifications.
Appellant appeals, raising four assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION.
 II. THE JURY VERDICT WAS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. TRIAL COUNSEL WAS INEFFECTIVE IN HIS REPRESENTATION OF APPELLANT AT TRIAL AND THE 180 HEARING.
 IV. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT IS A SEXUALLY VIOLENT PREDATOR.
In his first assignment of error, appellant asserts that the trial court erred in failing to grant his Crim.R. 29 motion for acquittal. We disagree.
Under Crim.R. 29(A), the trial court shall grant a defendant's motion for acquittal if the evidence is insufficient to sustain a conviction. The evidence is sufficient to sustain a conviction under Crim.R. 29(A) "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. In deciding whether to grant a motion for acquittal, the court must construe all evidence in a light most favorable to the state. State v. Evans (1992), 63 Ohio St.3d 231, 248. In reviewing a trial court's decision to deny a motion for acquittal, "our analysis of the evidence focuses not upon its weight or credibility, which are ordinarily matters for the jury, but rather its quantitative sufficiency
to establish beyond a reasonable doubt each element of the offense."State v. Kline (1983), 11 Ohio App.3d 208, 213.
In this case, the trial court allowed the jury to deliberate on six charges of rape. According to R.C. 2907.02, the statute defining rape, it is unlawful for anyone to engage in sexual conduct with another through force or threat of force. Here, the rape charges stem from Canbi performing fellatio on appellant in his living room and bedroom; Canbi performing cunnilingus on Soto; Soto inserting a hammer in Canbi's anus; and appellant inserting his fist in Canbi's anus while in the living room and bedroom.
Initially, we conclude that the trial court properly allowed the jury to deliberate on the rape charges involving Soto. Appellant used Soto in his scheme to force Canbi to submit to various sexual activities. By using Soto in such a manner, appellant could be found guilty of complicity in the commission of rape and may be punished as if he, rather than Soto, were the individual physically involved in the sexual activities. See R.C. 2923.03(A) and (F).
We further conclude that the force element to all the rape charges was established for the jury's deliberation. Force and threat of force "can be inferred from the circumstances surrounding sexual conduct." Statev. Schaim (1992), 65 Ohio St.3d 51, paragraph one of the syllabus. The forcible element of rape is established when a defendant's actions create "the belief that physical force will be used if the victim does not submit" to the defendant's actions. Id. Similarly, the forcible element of rape is established when the defendant causes a victim's will to be overcome by fear or duress. State v. Fowler (1985), 27 Ohio App.3d 149,154; see, also, State v. Martin (1946), 77 Ohio App. 553, 554 (concluding that, "where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape * * * when it is shown that her will was overcome by the fear or duress"). Thus, a defendant's rape conviction was upheld where the defendant claimed to be a police officer and unlawfully restrained a woman of her liberty and subjected her to a series of frightful experiences that eventually culminated in sexual conduct. Id.
In this case, Canbi testified that she thought she would be killed if she refused to comply with appellant's orders. Appellant stated, "I told you if it come to this, I was going to split you from here to here." Canbi interpreted these remarks as a threat to harm her. At one point, appellant took out two garbage bags and threatened to throw her in a river after he killed her. He also threatened to kill Canbi if Howell left the apartment. Eventually, appellant used physical force against Canbi. Appellant poured bleach inside Canbi's vagina and forced her to sit in the bleach for about one hour. Appellant punched and kicked Canbi throughout the encounter and, at one point, hit her with a hammer. As well, he forced Canbi to cut her mouth and vagina with a knife. Eventually, the events of the evening transpired into Canbi engaging in various sexual activities.
Based on appellant's conduct, it would be reasonable for a jury to conclude that appellant imposed a feeling of fear on Canbi, resulting in her losing her free will and feeling compelled to submit to various sexual activities. Canbi's failure to physically resist or fight appellant does not lead us to conclude otherwise. A victim need not prove physical resistance to the offender in prosecutions for rape. R.C.2907.02(C).
The trial court also properly allowed the jury to deliberate on the felonious assault charge. R.C. 2903.11 defines felonious assault and states that no person shall knowingly cause serious physical harm to another. A person suffers serious physical harm if he or she suffers "temporary, serious disfigurement." R.C. 2901.01(A)(5)(d). Serious physical harm also includes any physical harm that involves acute pain "of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e).
In this case, appellant punched Canbi with his fists, threw a glass at her and punched her with a hammer. From these assaults, Canbi sustained cuts on her face and thighs, and scrapes on her back, and also sustained bruises on many parts of her body, including her left eye which became swollen. A jury could properly conclude that these substantial cuts, scrapes and bruises constitute "temporary, serious disfigurement." SeeState v. Jones (1992), 83 Ohio App.3d 723, 738. A jury could also properly conclude that Canbi endured "acute pain" for such a duration as to "result in substantial suffering" when he poured bleach in her vagina and forced her to sit in the bleach for approximately one hour.
As well, the trial court properly allowed the jury to deliberate on the kidnapping charge. Under R.C. 2905.01, a person is guilty of kidnapping if he or she removes another "from the place where the other person is found" by force, threat or deception "[to] terrorize, or to inflict serious physical harm on the victim or another," or "engage in sexual activity * * * with the victim against the victim's will[.]" An offense under R.C. 2905.01 does not depend on the distance a victim is removed or the manner the victim is restrained. 1974 Committee Comment to R.C.2905.01. Rather, "it depends on whether the removal or restraint is such as to place the victim in the offender's power and beyond immediate help, even though temporarily." Id. In this case, appellant used force and threats of force to place Canbi within his power to both restrain her and move her in different areas of his apartment so that he could inflict serious physical harm on her and force her to submit to various sexual activities.
Lastly, we conclude that the trial court properly allowed the jury to deliberate on the possession of criminal tools charges. Under R.C. 2923.24, no person shall possess any "substance, device, instrument or article" with the purpose to use it criminally. In this case, the record indicates that appellant was in possession of bleach, hydrogen peroxide and a hammer, and used these tools to commit the crimes noted above.
We acknowledge appellant's contention that Canbi's testimony on the sexual encounter with Soto is invalid and could not have been used by the jury in its deliberation. However, for the reasons noted below, such a contention lacks merit. Accordingly, we conclude that the trial court did not err in failing to grant appellant's Crim.R. 29 motion, and overrule his first assignment of error.
In his second assignment of error, appellant asserts that there is insufficient evidence to support his convictions of rape, felonious assault and possession of criminal tools. We disagree.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing whether a verdict is supported by sufficient evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
In this case, as noted above, appellant was convicted of four counts of rape, one count of felonious assault and two counts of possession of criminal tools, in particular bleach and a hammer. Based on the evidence noted above in our discussion of appellant's first assignment of error, we conclude that there is sufficient evidence to support appellant's convictions.
As well, in his second assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. We disagree.
In reviewing whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." Thompkins, at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id.
Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. (quoting State v. Martin [1983],20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387.
Appellant contends that his convictions are against the manifest weight of the evidence because Canbi and Howell gave inconsistent and incredible testimony. However, nothing in the record suggests that these witnesses' testimonies should have been discounted by the jury. The witnesses provided vivid and specific descriptions of the events taking place in appellant's apartment. Furthermore, contrary to appellant's assertions, the witnesses' testimonies contain no grave inconsistencies. Accordingly, we conclude that appellant's convictions are not against the manifest weight of the evidence.
As such, we overrule appellant's second assignment of error.
We next address appellant's third assignment of error as it relates to appellant's contention that he was denied his right to effective assistance of counsel at trial.
The United States Supreme Court set forth the test for determining whether a defendant received ineffective assistance of counsel inStrickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance and, thus, was deficient. Id. at 687. Second, the defendant must show that he or she was prejudiced by such deficient performance. Id. A defendant was prejudiced by his or her trial counsel's performance if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id.
Appellant first claims that he received ineffective assistance of counsel when his trial counsel failed to perform pre-trial investigations. An attorney preparing for trial has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Kimmelman v. Morrison (1986),477 U.S. 365, 385. In this case, the record does not support appellant's bald assertion that his trial counsel performed no pre-trial investigations. Rather, the record indicates that appellant's trial counsel filed investigation-related motions, including a demand for discovery and a request for a bill of particulars.
Appellant also contends that he received ineffective assistance of counsel because his trial counsel failed to object to hearsay testimony given by Canbi when she described her sexual encounter with Soto. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally not admissible unless the statement is excluded or excepted from the hearsay definition as indicated in Evid.R. 801, 803, 804, 805, 806 and 807. Here, although Canbi testified to Soto's conduct during the sexual encounter, she did not provide hearsay statements from Soto. Additionally, while Canbi did testify to out-of-court statements by appellant, such testimony is admissible under Evid.R. 801(d)(2), which states that out-of-court statements made by a party and used against him or her at trial are admissible. Thus, Canbi provided no hearsay testimony necessitating an objection from appellant's trial counsel.
Appellant further asserts that his trial counsel failed to protect appellant's right to confront witnesses who testify against him, as guaranteed by the Sixth Amendment to the United States Constitution. Appellant contends that his confrontation rights were violated when Canbi testified about the sexual encounter with Soto because Soto was not called to testify. Appellant contends that Soto's testimony was essential so that the jury could hear and observe her account of the sexual encounter. However, appellant's right to confront witnesses was not violated when Canbi testified about Soto's conduct, even though Soto was not asked to testify. The Confrontation Clause of the Sixth Amendment provides two types of protections for a criminal defendant: "the right physically to face those who testify against him, and the right to conduct cross-examination." Pennsylvania v. Ritchie (1987), 480 U.S. 39, 51. In this case, appellant was present during Canbi's testimony. As well, his trial counsel did cross-examine Canbi about the sexual encounter with Soto and, thus, was given the opportunity to test Canbi's credibility. The ability to test a witness' credibility is an important part of the right of confrontation. Davis v. Alaska (1974), 415 U.S. 308, 316. Therefore, appellant's Sixth Amendment right to confront witnesses was not violated and his trial counsel had no grounds to make such a claim. In addition, the record does not indicate that the trial court prohibited appellant from calling witnesses to testify on his behalf. Thus, appellant's Sixth Amendment right to have compulsory process for obtaining witnesses was not violated, and his trial counsel had no grounds to make such an assertion. See Washington v. Texas (1967), 388 U.S. 14, 18.
Appellant further asserts that Soto should have been compelled to testify. However, any decision by appellant's trial counsel to not call Soto as a witness does not automatically constitute ineffective assistance of counsel. The decision to call a witness is within the realm of trial tactics. State v. Hurt (1984), 20 Ohio App.3d 310, 312; Statev. DeBlanco (July 14, 1998), Franklin App. No. 97APA08-1049, unreported. Courts must generally refrain from second-guessing strategic decisions of trial counsel. State v. Sallie (1998), 81 Ohio St.3d 673, 674. In this case, appellant has not demonstrated that Soto's testimony would have helped his defense or otherwise affected the outcome of the trial. Moreover, we cannot speculate on whether Soto's testimony would have helped appellant's defense. See State v. Owens (Mar. 1, 1990), Cuyahoga App. No. 56577, unreported. Thus, we are not compelled to conclude that appellant was denied effective assistance of counsel when his trial counsel did not compel Soto's testimony.
Moreover, appellant claims his trial counsel was required to object when appellee elicited testimony through leading questions on direct examination of its witnesses. A leading question is one that suggests to the witness the answer desired by the examiner. State v. Crome (Sept. 25, 1997), Franklin App. No. 96APA11-1600, unreported, citing McCormick, Evidence (4 Ed. 1992) 17-18, Section 6. Leading questions should not be used on direct examination of a witness except in situations where such questioning is necessary to develop the witness' testimony. Evid.R. 611(C). In his appellate brief, appellant references portions of the record where his trial counsel used leading questions when cross-examining Canbi. Generally, leading questions are permissible on cross-examination. Evid.R. 611(C). Thus, in this case, the testimony elicited on cross-examination was not improperly elicited. Furthermore, the record does not establish that appellee used leading questions to elicit crucial testimony during direct examination of its witnesses. Appellee's questioning on crucial matters during direct examination was not suggestive and allowed the witnesses to testify from their own recollections and perspectives. Thus, appellee did not ask leading questions that necessitated an objection from appellant's trial counsel.
Next, appellant claims his trial counsel was required to seek suppression of hammers, knives and Canbi's clothing, which were collected from appellant's apartment without a warrant. The failure to file a motion to suppress can constitute ineffective assistance of counsel if such failure prejudices the defendant. State v. West (Nov. 23, 1999), Franklin App. No. 98AP-1527, unreported. To demonstrate ineffective assistance of counsel in the failure to file a motion to suppress, the defendant must show some meaningful evidence on the record that would support the granting of the motion. Id. In this case, appellant would be required to demonstrate that the items collected without a warrant would have been suppressed because they were collected in violation of theFourth Amendment to the United States Constitution. We note that, other than witnesses identifying the above items at trial, there was no other evidence stemming from the warrantless search of items. For example, there was no DNA evidence linking bodily matter on the items to appellant or Canbi.
Under the Fourth Amendment to the United States Constitution, searches and seizures inside a home without a warrant are presumptively unreasonable and invalid. Payton v. New York (1980), 445 U.S. 573, 586. A warrantless search of an individual's home is valid only under a few "`specifically established and well-delineated' situations." Vale v.Louisiana (1970), 399 U.S. 30, 34. For example, police officers may make a warrantless search of an individual's home when the items ultimately seized were under the process of being destroyed or when officers enter the home to pursue a fleeing felon. Id. at 35. As well, officers may make warrantless searches and seizures of highly evanescent evidence. SeeSchmerber v. California (1966), 384 U.S. 757, 770-771 (concluding that the Fourth Amendment did not prohibit a police officer from performing a warrantless blood test on an individual arrested for operating a motor vehicle under the influence of alcohol because the alcohol in the individual's blood would begin to diminish shortly after the drinking stopped). Evidence stemming from a search and seizure conducted in violation of the Fourth Amendment cannot be used in a criminal proceeding against an individual who was subjected to the illegal search and seizure. Mapp v. Ohio (1961), 367 U.S. 643, 654.
In this case, a detective from the sheriff's department testified that individuals investigating the crime scene collected the above items without a warrant because they wanted to refrigerate the items as soon as possible. However, supposing the items only contained blood and other bodily material, the record does not indicate that such bodily material constituted highly evanescent evidence capable of being destroyed if not collected as soon as possible. Indeed, the officers were able to collect blood samples from appellant's carpet after obtaining a warrant. Moreover, we do not have sufficient information in the record to conclude whether the search and seizure was valid under other exceptions to the warrant requirement. Nonetheless, we find no reasonable probability that the outcome of appellant's trial would have been different had the above items been suppressed. There was other sufficient evidence, including testimony from Canbi and Howell, to allow the trial to proceed and to allow the jury to convict appellant of the charges filed against him. As such, appellant did not receive ineffective assistance of counsel when his trial counsel failed to seek suppression of items collected in appellant's apartment without a search warrant.
Appellant also asserts that his trial counsel was required to request DNA testing on several items found in appellant's apartment after a witness from the Ohio Bureau of Criminal Identification and Investigation testified that no DNA testing was performed on the items. In particular, appellant asserts that his trial counsel needed to request DNA testing on items in the rape kit, matter collected from a hammer used during the sexual encounter, matter collected from a hammer used by appellant to punch Canbi, and blood and hair samples collected from appellant's carpet, sofa and bed sheet. However, appellant has not established that the DNA testing on these items would have exonerated appellant or otherwise affected the outcome of the trial. Much of the trial centered on whether appellant used force and threat of force to compel Canbi to submit to the sexual activities. To determine whether force and threat of force was used, the jury had to examine testimony related to appellant's conduct. The jury's decision on the issue would not have turned on DNA evidence. Thus, we reject appellant's contention that his trial counsel's failure to order the DNA testing constitutes ineffective assistance of counsel.
Additionally, appellant's ineffective assistance of counsel claim is based on Canbi's testifying that she previously had anal sex with appellant to pay back a monetary debt. Canbi provided the testimony while being cross-examined by appellant's trial counsel. Appellant claims that the answer was not responsive to his trial counsel's question and that his trial counsel should have either sought to strike the answer, requested a limiting instruction, or moved for a mistrial. Generally, prior bad acts of a defendant are inadmissible. Evid.R. 404(A)(1). However, testimony on the defendant's past sexual activity with the victim is admissible to the extent it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. R.C. 2907.02(D).
Here, testimony concerning appellant's past sexual activity with Canbi is arguably admissible on grounds that it helps the jury determine whether Canbi willingly submitted to the sexual encounters to "pay" appellant back for stealing his cellular phone. Nonetheless, even if the evidence would not have been admitted if objected to, nothing in the record indicates that the jury was tainted by hearing the testimony. The testimony did not become the central focus of the trial and the jury was not constrained to use the information to convict appellant of the charges filed against him. As noted above, the jury received competent, credible evidence concerning Canbi being forced to engage in various sexual activities and was able to use this other evidence to properly convict appellant.
Furthermore, appellant claims his trial counsel was ineffective in failing to object to the admissibility of appellee's Exhibit C, which consists of medical records of Canbi's visit to the hospital after the sexual encounter at appellant's apartment. Appellant claims the records were admitted into evidence without proper foundation and authentication. Under Evid.R. 901(A), records are required to be authenticated prior to being admitted into evidence. A record is authenticated by putting on evidence establishing that "the matter in question is what its proponent claims." Evid.R. 901(A). In this case, nurse Lori Miller testified that Exhibit C consists of medical records, some of which she was involved in preparing to document Canbi's hospital visit. Such testimony provided proper authentication of the medical records.
As well, appellee was required to establish proper foundation under Evid.R. 803(6), which governs the business records exception to the hearsay rule. Under Evid.R. 803(6), the proponent of a business record must show that: the record was kept in the course of a regularly conducted activity; was prepared as part of a regular practice of the business activity; was prepared by a person with knowledge of the act, event or condition; and was prepared at or near the time of the transaction. In this case, Miller established that the medical records in Exhibit C were prepared and maintained in accordance with her regular duties. Specifically, Miller testified that her regular duties are to examine and gather information from patients alleged to be victims of sexual assaults. She also indicated that she often testifies about such information at trial. As well, Miller testified that the medical records in Exhibit C were made by Miller and a doctor while performing a physical examination on Canbi. Thus, we conclude that Miller's testimony establishes proper foundation under Evid.R. 803(6) for the admission of Exhibit C. Thus, appellant's trial counsel was not deficient in failing to object to the admissibility of the medical records on grounds of improper authentication and foundation.
Appellant also asserts that his trial counsel was required to object to the trial court's decision to instruct the jury on complicity with regard to the rape counts involving the sexual encounter between Canbi and Soto. According to appellant, the trial court was unable to provide the complicity instruction to the jury because appellant was indicted only as a principal offender of rape. R.C. 2923.03(F) allows a charge of complicity to be stated in terms of the complicity statute or in terms of the principal offense. Thus, a jury instruction on complicity is proper even though a defendant is indicted and charged as a principal offender if the evidence at trial could reasonably be found to have proven the defendant guilty under a complicity theory. State v. Perryman (1976),49 Ohio St.2d 14, paragraph five of the syllabus, vacated in part on other grounds, Perryman v. Ohio (1978), 438 U.S. 911; State v. Tumbleson
(1995), 105 Ohio App.3d 693, 697; State v. Ensman (1991),77 Ohio App.3d 701, 705. Accordingly, we previously allowed a trial court to instruct a jury on complicity, even though the indictment charged defendants as principal offenders. State v. Sims (Feb. 20, 1997), Franklin App. No. 96APA05-676, unreported.
In Sims, we noted that, from the beginning of the trial, the defendants were on notice, pursuant to R.C. 2923.03(F), that evidence could be presented establishing that the defendants were either principal offenders or offenders through a complicity theory. Id.; see, also, Hill v. Perini
(C.A.6, 1986), 788 F.2d 406, 408, certiorari denied (1986), 479 U.S. 934 (recognizing that a defendant has notice that the jury may be given a complicity instruction even though the defendant was charged as a principal offender when the evidence at trial indicates that the defendant committed the offense under a complicity theory). In this case, as noted above, the evidence at trial supports a complicity theory. Thus, the trial court's decision to provide a complicity charge to the jury is legally correct and there is nothing in the record to indicate the trial court would have concluded otherwise had appellant's trial counsel objected to the instruction. As such, appellant did not receive ineffective assistance of counsel when his trial counsel failed to object to the complicity jury instruction.
Accordingly, we overrule appellant's third assignment of error as it relates to his claims of receiving ineffective assistance of counsel at trial.
Lastly, we address appellant's third assignment of error, as it relates to his claim of receiving ineffective assistance of counsel at the sexually violent predator hearing, with appellant's fourth assignment of error, which asserts that the trial court erred in finding appellant to be a sexually violent predator.
As noted above, although the trial court found appellant to be a sexually violent predator at the hearing, its judgment entry does not reflect such a decision. The judgment entry indicates that appellee dismissed all sexually violent predator specifications. However, the record contains no indication that appellee dismissed the specifications. Thus, the judgment entry does not appear to adequately reflect the trial court's decision on the sexually violent predator determination. However, a court speaks only through its journalized entries. Carter v. Johnson (1978), 55 Ohio App.2d 157, 162, citingFountain v. Pierce (1931), 123 Ohio St. 609. As such, we remand this case to the trial court to issue a judgment entry that reflects its decision on the sexually violent predator specification. Accordingly, appellant's third assignment of error, concerning the sexually violent predator hearing, and appellant's fourth assignment of error are overruled because they contain issues not ripe for adjudication on the merits until the trial court has issued a judgment entry reflecting its decision on the sexually violent predator specification. See State v. Harley (June 4, 1992), Franklin App. No. 91AP-1422, unreported.
In summary, we overrule appellant's first, second, third and fourth assignments of error, and the judgment of the trial court is affirmed; however, for the reasons stated above, we remand this case to the trial court to issue a judgment entry reflecting its decision on the sexually violent predator specifications.
 __________________ KENNEDY, J.
BRYANT and DESHLER, JJ., concur.